IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

MILTON L. C.,[1]                              §
                                             §
                    Plaintiff,               §
                                             §
v.                                           §       Civil Action No. 1:20-CV-00113-H-BU
                                             §
ANDREW M. SAUL,                              §
Commissioner of Social Security,             §
                                             §
                    Defendant.               §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Milton L. C. seeks judicial review of a final adverse decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the Commissioner's decision should be affirmed.

## I. BACKGROUND

Plaintiff alleges that he is disabled beginning February 5, 2018 due to a variety of ailments, including lower back problems, left hip arthritis, problems with his legs and feet, neck problems, breathing issues, and high blood pressure. *See* Administrative Record [Dkt. No. 17 ("Tr.") at 171, 202]. Plaintiff initially applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423(d)(1)(A) on April 19, 2018. Tr. 171. After his application was denied initially and on reconsideration, Plaintiff challenged the

---

[1] Due to concerns regarding the privacy of sensitive personal information available to the public through opinions in Social Security cases, Plaintiff is identified only by first name and last initial.

1

denial and requested a hearing before an Administrative Law Judge ("ALJ"). That hearing was held on August 14, 2019. *See* Tr. 32–55

At the time of the hearing, Plaintiff was 54 years old. Tr. 36. He has an eighth-grade education, with special education classes. *Id*. Plaintiff did not obtain a GED. *Id*. Plaintiff has past work experience as a lube technician and landscape laborer. Tr. 37–38.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability benefits. *See* Tr. 14–26 (ALJ Decision). At step one of the analysis,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 5, 2018, Plaintiff's alleged disability onset date. Tr. 19. At step two, the ALJ found that Plaintiff had the "severe" impairments of obesity, degenerative disc disease of the lumbar spine, and obstructive sleep apnea. *Id*. At step three, the ALJ determined that none of Plaintiff's impairments or combination of impairments met or equaled the severity of one of the impairments listed in the Social Security regulations. Tr. 20.

The ALJ also determined at step three that Plaintiff had the residual functional capacity ("RFC") to

> lift and carry twenty (20) pounds occasionally and ten (10) pounds frequently. He is also able to stand and walk for two (2) hours in an eight (8) hour workday, and sit for six (6) hours in an eight (8) hour workday. He requires the flexibility to periodically alternate between sitting and standing at will, but at least every thirty (30) minutes, to relieve pain or discomfort (with no restrictions for shifting positions while seated). He is able to occasionally climb ramps and stairs, as well as, occasionally balance, crouch, and stoop. He is unable to kneel and crawl. He is able to constantly reach, handle, finger, and feel with his right upper extremity. He is also able frequently reach, handle, finger, and feel with his left upper extremity.

---

[2] As discussed further below, the Commissioner employs a five-step analysis in determining whether claimants are disabled under the Social Security Act.

Environmentally, he should avoid hazardous moving machinery, excessive vibrations, and unprotected heights. His ability to hear and see are not limited.

Tr. 20–21.

At step four, the ALJ found that Plaintiff could not return to his past relevant work. Tr. 23–24. The ALJ considered Plaintiff's age, education, work experience, and RFC in conjunction with both the Medical-Vocational Guidelines ("Grids") and a vocational expert's ("VE") testimony and found Plaintiff capable of performing work that existed in significant numbers in the national economy. Tr. 24–25. Specifically, the ALJ found, based on the VE's testimony, that although Plaintiff's ability to perform the full range of light work was impeded by certain limitations, Plaintiff would be able to perform a modified range of light work. *Id.* Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined by the Social Security Act, for the period in question. Tr. 25.

Plaintiff appealed the ALJ's decision to the Appeals Council. The Council affirmed. Plaintiff then timely filed this action in federal district court.

## II.  LEGAL STANDARDS

Judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards were applied to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

Substantial evidence means more than a scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant

evidence as a responsible mind might accept to support a conclusion." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). While a reviewing court must scrutinize the administrative record to ascertain whether substantial evidence supports the Commissioner's findings, it may not reweigh the evidence, try issues *de novo*, or substitute its own judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (citing 42 U.S. § 405(g)). A reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

To be entitled to Social Security benefits, a claimant must show that he is disabled within the meaning of the Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

In evaluating a disability claim, the Commissioner has promulgated a five-step sequential process to determine whether: (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the Social Security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing

any other substantial gainful activity. *See* 20 C.F.R. § 404.1520; *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. Once the claimant satisfies his or her initial burden, the burden shifts to the Commissioner at step five to show that there is other gainful employment in the national economy that claimant is capable of performing. *Greenspan*, 38 F.3d at 236. If the Commissioner shows that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557 (citing *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989) (per curiam); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984)). If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id*. However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728–29 (5th Cir. 1996).

## III.  ANALYSIS

Plaintiff challenges the ALJ's decision on three grounds. First, Plaintiff contends that the ALJ erred in finding that Plaintiff could perform a modified range of light work, when the ALJ's RFC and supporting discussion indicates that Plaintiff would be limited to sedentary work. Second, Plaintiff argues that the ALJ erred in rejecting evidence submitted by Plaintiff regarding his inability to afford treatment and evaluation. Third, Plaintiff argues that the ALJ erred by not making a finding as to the severity of each of Plaintiff's alleged impairments.

For the reasons outlined below, the undersigned finds that each of Plaintiff's points lacks merit.

A. <u>The ALJ's determination that Plaintiff is capable of performing a modified range of light work</u>

Plaintiff argues that the ALJ erred in finding that Plaintiff could perform a modified range of light work when, in the RFC, the ALJ had determined that Plaintiff could only walk up to two hours in a day. *See* Dkt. No. 19 at 4–7. Further, Plaintiff points to the ALJ's explicit statement in the discussion supporting the RFC that Plaintiff's obesity "reduced his residual functional capacity to the sedentary exertional level." *Id*. at 5.

Except as discussed below, Plaintiff does not argue that the ALJ's RFC was unsupported or incorrect. Dkt. No. 21 at 1. Instead, Plaintiff contends that the functional limitations in the RFC are consistent with sedentary, and not light work. Dkt. No. 19 at 6. Because of the reference to a sedentary exertional level and the functional limitations

contained in the RFC, Plaintiff argues that the ALJ was required to apply the Grid rule for sedentary work, and on that basis should have found that Plaintiff was disabled. *Id*.

In response, the Commissioner argues that despite any reference by the ALJ to a sedentary exertion level (which the Commissioner calls a "scrivener's error"), the ALJ's evaluation of the evidence as a whole supports the RFC finding for a modified range of light work. Dkt. No. 20 at 7. Specifically, the Commissioner notes that both the objective medical evidence and the opinion evidence provided by the State agency consultants supported the finding of a modified range of light work. *Id*. at 10.

The Commissioner argues that the functional limitations in the RFC are consistent with light work. *Id*. And, because the ALJ relied on VE testimony that restricted the light work occupations to those with a sit/stand option, the Commissioner contends that substantial evidence supports the ALJ's determination that Plaintiff was able to perform other work in the national economy. *Id*. at 11. Thus, the Commissioner argues that the decision finding Plaintiff not disabled is supported by substantial evidence. *Id*.

An individual's RFC is the most an individual can do despite his limitations or restrictions. *See* 20 C.F.R. § 404.1545(a)(1). An RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1, 3–5 (S.S.A. July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id*. at *1. "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Id*.

7

"It is the responsibility of the ALJ to interpret 'the medical evidence to determine [a claimant's] capacity for work.'" *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) (per curiam) (quoting *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)). The ALJ's RFC assessment is to be based upon "*all* of the relevant evidence in the case record," including, but not limited to, "medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, and work evaluations." *Eastham v. Comm'r of Soc. Sec. Admin.*, No. 3:10-CV-2001-L, 2012 WL 691893, at *6 (N.D. Tex. Feb. 17, 2012) (citing SSR 96-8p).

The ALJ is responsible for resolving any conflicts in the evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam). But the ALJ is not required to expressly state in the RFC the limitations on which it is based. *Cornejo v. Colvin*, No. EP-11-CV-470-RFC, 2013 WL 2539710, at *9 (W.D. Tex. June 7, 2013) (citing *Bordelon v. Astrue*, 281 F. App'x 418, 422–23 (5th Cir. 2008) (per curiam)). Nor is an ALJ required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). The ALJ may find that a claimant has no limitation or restriction as to a functional capacity when there is no allegation of a physical or mental limitation or restriction regarding that capacity and no information in the record indicates that such a limitation or restriction exists. *See* SSR 96-8p, 1996 WL 374184, at *1.

In this case, the ALJ determined Plaintiff's RFC at step three by performing the requisite function-by-function analysis. In regard to standing and sitting, the ALJ determined that Plaintiff could stand and walk for two hours and sit for six hours in an

eight-hour work day. Tr. 20. The ALJ further found that Plaintiff required "the flexibility to periodically alternate between sitting and standing at will, but at least every thirty (30) minutes, to relieve pain or discomfort (with no restrictions for shifting positions while seated)." *Id*. Also relevant, the ALJ found that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently." *Id*.

In making his finding regarding Plaintiff's specific functional limitations, the ALJ considered the objective medical evidence as well as the opinions of the State agency medical consultants. The ALJ noted Plaintiff's alleged lower spine pain, left hip arthritis, lower extremity numbness, cervical spine dysfunction, high blood pressure, stomach pain, radiating knee pain, elevated stress levels, sleep disturbances, reduced stamina, poor morale, lack of self-motivation, memory deficits, and reduced range of motion. However, the ALJ also noted that Plaintiff was able to perform household chores, complete shopping errands, and operate a motor vehicle. Tr. 21. The ALJ considered that Plaintiff underwent numerous physical examinations that did not consistently describe severe range of motion limitations, debilitating pain, or the inability to function. Tr. 22. Although Plaintiff reported that he was involved in an ATV accident in July 2018, the ALJ noted that when Plaintiff sought medical attention for that accident (approximately one month after the fact), the examination did not show injuries to Plaintiff's spine, extremities, chest, or head. Tr. 22.

The ALJ further noted that a follow-up examination of Plaintiff's lumbar spine, as well as a lumbar spine MRI scan in September 2018, did not reveal significant abnormalities. Tr. 22. Although there was some evidence of disc desiccation with minimal disc height loss at the L5-S1, the ALJ noted that the vertebral body heights were normal

and there was no evidence of significant disc protrusions or severe nerve impingements. *Id*.

The ALJ considered, but did not find persuasive, a brief assessment provided in March 2019 by a physical therapist, Mr. Craig Hanson, regarding Plaintiff's ability to work. *Id*. In that assessment, Mr. Hanson had circled options on a standardized form indicating that Plaintiff could only stand, walk, or sit for 0–2 hours in an eight-hour work day. Tr. 517. The ALJ found the physical therapist's opinions unpersuasive because they were based on a single office examination and not a review of medical evidence in the file, including the lumbar spine MRI scan. Tr. 22.

The ALJ found the assessments provided by the State agency medical consultants, Dr. Stephen Drake and Dr. Michal Douglas, to be persuasive. Tr. 23. The State agency medical consultants had found that Plaintiff was capable of performing the exertional demands of light work. Tr. 72. Specifically, Dr. Douglas had found that Plaintiff could stand and/or walk (with normal breaks) for a total of six hours in an eight-hour work day. Tr. 68. Dr. Douglas further found that Plaintiff could occasionally lift and/or carry twenty pounds, and frequently carry ten pounds. *Id*. In this respect, the ALJ's RFC, which included the limitation that Plaintiff could walk only two hours in an eight-hour work day was more restrictive than that provided by the State agency medical consultants. Tr. 20.

At step four, the ALJ compared the specific functional limitations in Plaintiff's RFC to Plaintiff's past work as a lubrication servicer and a landscape laborer. Tr. 24. Relying on the testimony of the VE at the hearing, the ALJ determined that because the demands of these positions, Plaintiff was unable to perform his past work. *Id*.

As explained above, the Commissioner has the burden at step five to show that gainful employment exists for a claimant. To be considered disabled, a claimant must have a severe impairment that makes him unable to perform his previous work or any other substantial gainful activity existing in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1505(a). "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [a claimant is] able to meet with [her] physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(b). "To determine the physical exertion requirements of work in the national economy, [the Social Security Administration] classif[ies] jobs as sedentary, light, medium, heavy, and very heavy." 20 C.F.R. § 404.1567. "[I]n order for an individual to do a full range of work at a given exertional level, such as sedentary, the individual must be able to perform substantially all of the exertional and nonexertional functions required in work at that level." SSR 96-8p, 1996 WL 374184, at *3.

In demonstrating that gainful employment exists, an ALJ may rely on the agency's Medical-Vocational Guidelines, otherwise known as the "Grids," or the testimony of a VE facilitated though the posing of hypothetical questions or other similar evidence. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); 20 C.F.R. Pt. 404, Subpt. P, App. 2. The Grids contain multiple tables accounting for work at various exertion levels (sedentary, light, medium, heavy, or very heavy) that predict a disability determination based on the age, education, and previous work experience of the claimant. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2.

11

In this case, Plaintiff argues that the ALJ was required to apply the Grid rule for sedentary work, because under Agency policy "light work requires frequent standing and walking," for at least 1/3 to 2/3 of the workday. Dkt. No. 19 at 5 (citing SSR 83-10, 1983 WL 31251 *5-6). The definition of light work then, appears to exceed the functional limitations in Plaintiff's RFC, which provided that Plaintiff could only stand or walk for up to two hours. Further, Plaintiff argues, light work requires "frequent lifting and carrying" which entails "being on one's feet for up to two-thirds of the workday." *Id*. If the ALJ had instead applied the Grid rule for sedentary work, based on Plaintiff's age and education level, Plaintiff notes he would have been found disabled.

Nevertheless, Plaintiff's argument is without merit. Despite the aforementioned reference by the ALJ to a "sedentary exertional level" when discussing Plaintiff's obesity, the ALJ did not determine that Plaintiff would *only* be capable of work at the sedentary exertion level. Instead, in his step five analysis, he started from the assumption that if Plaintiff was capable of performing the full range of light work, a finding of not disabled would be directed by the Grids. Tr. 25. But because the ALJ found that Plaintiff's additional limitations impeded his ability to perform all or substantially all of the requirements of light work, the ALJ consulted with the VE to determine the extent to which Plaintiff's limitations eroded the unskilled light occupational base. *Id*.

Contrary to Plaintiff's assertions, the ALJ's decision to elicit testimony from the VE, rather than apply the sedentary exertion level Grid rule, is consistent with Agency policy. *See* SSR 83-12, 1983 WL 31253, at *1 (Jan. 1, 1983). SSR 83-12 provides guidance for disability determinations where an "exertional level falls between two rules which

direct opposite conclusions i.e., 'Not disabled' at the higher exertional level and 'Disabled' at the lower exertional level." *Id*. at *2. In cases where an exertional level is only slightly reduced, an ALJ may justifiably conclude that a claimant is not disabled. *Id*. But where an "individual's exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability." *Id*. at *3. In such cases, adjudicators are advised to obtain the assistance of a VE. *Id*.

Further, the Fifth Circuit has found that a claimant may only be able to perform a limited range of work within an exertional level and still have the RFC to perform work at that exertional level. *See, e.g., Landfried v. Apfel,* 218 F.3d 743, 2000 WL 821361, at *3 (5th Cir. 2000) (unpublished). In *Landfried*, as in this case, the ALJ found that although the claimant would be limited to "standing/walking two of eight work day hours" she nevertheless had an RFC for a modified  range of light work. *Id*. The court affirmed the Commissioner's decision, finding that sufficient medical evidence supported the conclusion limiting the claimant to a modified range of light work. *Id*.

Also relevant to this case, the Fifth Circuit rejected the argument that an administrative determination that the claimant had the RFC for sedentary work precluded a subsequent determination that the claimant was capable of a *modified range* of light work. *Id*. at *2. The court noted that "[a] finding that [the claimant] has the residual functional capacity for sedentary work is not tantamount to a finding that [the claimant] does not have

13

the residual functional capacity for a modified range of light work." *Id*. at *2 (citing *Houston v. Sullivan*, 895 F.2d 1012, 1015–16 (5th Cir. 1989)).

Additional Fifth Circuit cases have affirmed decisions by the Commissioner finding that a claimant is capable of performing work at a given exertional level, despite being limited to a modified range of work at that level. *See Hillman v. Barnhart*, 170 F. App'x 909, 913–14 (5th Cir. 2006) (finding that substantial evidence supported the ALJ's finding that claimant "could perform a limited range of unskilled, light work"); *Vaughan v. Shalala*, 58 F.3d 129, 131–32 (5th Cir. 1995) (affirming decision where the ALJ found that the claimant "could not perform the full range of sedentary work activity and expressly relied upon the vocational expert's identification of jobs as evidence of [the claimant's] ability to perform work in the national economy").

Further, "Plaintiff's claim that [he] cannot perform light work because [he] is limited to standing/walking for two hours of an eight-hour work–day has been expressly rejected in this district." *Kathryn G. v. Comm'r of Soc. Sec.*, No. 5:20-CV-021-BQ, 2020 WL 5520657, at *4 (N.D. Tex. Aug. 20, 2020) (collecting cases), *report and recommendation adopted sub nom. Kathryn G. v. Saul*, No. 5:20-CV-021-C-BQ, 2020 WL 5514394 (N.D. Tex. Sept. 14, 2020). In *Kathryn G.*, the court found that the ALJ's determination that the claimant had the RFC to perform light work was supported by substantial evidence, despite the fact that the RFC limited the claimant to two hours of standing per day. 2020 WL 5520657, at *4. The court noted that, under Agency policy, "[a]n ALJ may rely on VE testimony where, as here, the claimant's ability to perform

substantially all the requirements of light work was affected by additional limitations." *Id*. at *4 (citations and internal quotation marks omitted).

Likewise, in *Nino v. Berryhill*, the ALJ determined that the claimant was capable of performing occupations at the light exertional level despite also finding an RFC limiting the claimant to two hours of standing or walking. *Nino v. Berryhill*, No. 4:17-CV-100-A, 2018 WL 889454, at *5 (N.D. Tex. Jan. 29, 2018), *report and recommendation adopted*, No. 4:17-CV-100-A, 2018 WL 895601 (N.D. Tex. Feb. 13, 2018). The court affirmed the Commissioner's decision, finding that the ALJ's RFC and step five determination were consistent with Agency policy and supported by substantial evidence, where the ALJ relied on evidence in the record and VE testimony. *Id*. at *7.

Here, because the ALJ found that Plaintiff's ability to perform the full range of light work was impeded, he relied on VE testimony to determine the extent to which Plaintiff's impairments reduced the light work occupational base. Tr. 25. The VE specifically considered and testified concerning light level occupations that accounted for Plaintiff's limited standing and walking. Tr. 52. The VE testified that an individual with Plaintiff's RFC would be able to perform the requirements of several occupations at the light exertion level, including small item inspector, small products assembler, and nut and bolt assembler. *Id*. On that basis, the ALJ found that, "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. 25.

The undersigned therefore finds that both the ALJ's RFC and subsequent step-five determination that Plaintiff can perform a modified range of light work were made without legal error, are supported by substantial evidence, and should be affirmed. *See Kathryn G.*, 2020 WL 5520657, at *5.

B. The ALJ's consideration of Plaintiff's inability to afford treatment and evaluation

Plaintiff argues that the ALJ erred in rejecting evidence regarding his inability to afford treatment and evaluation. Dkt. No. 19 at 8. Plaintiff notes that the ALJ stated in his decision that "[t]he evidence does not reflect that the claimant has attempted to consistently avail himself of free or reduced medical care available to him in the community, although his treating physician referred the claimant to a local government indigent health care treatment center." Tr. 22.

Plaintiff contends that this characterization misunderstands or misinterprets the record evidence. Dkt. No. 19 at 8. Plaintiff points to evidence in the record indicating that financial considerations hindered his pursuit of medical care. *Id*. For example, Plaintiff alleges that he was unable to follow up with a neurosurgeon after his ATV accident due to a lack of insurance, and in September 2018 had difficulty getting medications through his income-based disability program. *Id*. And then, in November 2018, Plaintiff notes that he began seeing Nurse Practitioner Gloria McQueen through the Taylor County Indigent Health Care program. *Id*. Plaintiff argues that the ALJ should have considered Plaintiff's inability to afford treatment before drawing conclusions about gaps in his medical history. *Id*.

16

The interaction between a claimant's treatment history and financial situation can be relevant at several points in the disability determination. First, an ALJ may consider a claimant's failure to follow prescribed treatment when considering whether his condition is disabling. *See Johnson v. Sullivan*, 894 F.2d 683, 685 n.4 (5th Cir. 1990). "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." *Lovelace*, 813 F.2d at 59 (citations omitted). A claimant "must follow treatment prescribed by [his] medical source(s) if this treatment is expected to restore [his] ability to work." 20 C.F.R. § 404.1530(a). "If, however, the claimant cannot afford the prescribed treatment or medicine, and can find no way to obtain it, 'the condition that is disabling in fact continues to be disabling in law.'" *Lovelace*, 813 F.2d at 59 (quoting *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986)).

Additionally, whether a claimant sought past treatment is a relevant factor in determining the nature and severity of alleged symptoms. *See* 20 C.F.R. § 404.1529(c). In evaluating a claimant's alleged symptoms, the ALJ is to "consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements about how [his] symptoms affect [the claimant]." § 404.1529(a). The ALJ then must assess the "extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [his] ability to work." *Id*. Although treatment history is a relevant factor to be considered in assessing a claimant's symptoms, whether "[a]n individual may not be able to afford treatment and may not have access to free or low-cost

17

medical services" can be considered in evaluating the import of that treatment history. SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017).

Here, the ALJ did not determine that any prescribed course of treatment was expected to restore Plaintiff's ability to work. And the ALJ acknowledged that Plaintiff had terminated the physical therapy program because of self-reported limited progress in improving pain control. Tr. 22. Instead of citing Plaintiff's treatment history because treatment could have restored Plaintiff's ability to work, it appears that the ALJ found that history relevant for determining whether Plaintiff's subjective claims of a disabling condition were supported by the record. *See* Tr. 23.

As outlined in detail above, the ALJ conducted a comprehensive RFC assessment— one that was based upon "*all* of the relevant evidence in the case record." *Eastham*, 2012 WL 691893, at *6. That assessment included consideration of whether Plaintiff sought treatment for his alleged symptoms. Tr. 22. The ALJ considered Plaintiff's testimony that his ability to obtain medical treatments was limited due to financial hardship. *Id*. Ultimately, however, the ALJ did not find Plaintiff's testimony to be consistent with the record evidence, based on his determination that Plaintiff did not consistently avail himself of free or reduced medical care. *Id*.

While Plaintiff may disagree with the ALJ's assessment regarding the import of Plaintiff's financial situation on Plaintiff's treatment history, the ALJ is ultimately the one responsible for resolving any conflicts in the record evidence. *See Chambliss,* 269 F.3d at 522. Accordingly, the undersigned finds that Plaintiff's argument that the ALJ committed legal error in rejecting evidence is without merit.

18

C. <u>The ALJ's severity analysis</u>

Lastly, Plaintiff argues that the ALJ erred in analyzing the severity of Plaintiff's alleged impairments. Plaintiff objects "that the ALJ's decision makes no reference to *Stone* or the Fifth Circuit's construction of Agency severity regulations." Dkt. No. 19 at 9. Plaintiff also objects that although Plaintiff alleged disability based on "a back impairment, left hip arthritis, problems with his legs and feet, neck problems, breathing issues, and high blood pressure" these impairments were not addressed for severity. *Id*. As noted above, the ALJ determined severity with respect to "obesity, degenerative disc disease of the lumbar spine, and obstructive sleep apnea." Tr. 19.

At step two, the ALJ determines whether any of the claimant's impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). The Fifth Circuit held in *Stone v. Heckler*, that "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 752 F.2d 1099, 1101 (5th Cir. 1985). Stated differently, "an impairment is severe if it is anything more than a 'slight abnormality' that 'would not be expected to interfere' with a claimant's ability to work." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). Under *Stone*, courts within the Fifth Circuit "assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to [*Stone*], or by an express statement that" the ALJ used the construction the Fifth Circuit gives to the severity requirement. 752 F.2d at 1106; *Salmond*, 892 F.3d at 817 (reiterating the severity standard set forth in *Stone* as "binding precedent" (quoting *Loza v.*

*Apfel*, 219 F.3d 378, 391 (5th Cir. 2000)). However, "[a] case will not be remanded simply because the ALJ did not used the 'magic words.'" *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986).

The ALJ did not reference *Stone* in his decision. Instead, he cited SSR 85-28, 1985 WL 56856 (Jan. 1, 1985) and defined severe impairments as "medically determinable impairments" that "significantly limits an individual's ability to perform basic work activities." Tr. 18. SSR 85-28—a policy statement that clarifies the SSA's process for determining non-severe impairments—considers "[a]n impairment or combination of impairments" as "not severe" if "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." 1985 WL 56856, at *3.

In *Keel v. Saul*, 986 F.3d 551 (5th Cir. 2021), the Fifth Circuit recently addressed whether an ALJ's reference to SSR 85-28 satisfies the severity standard announced in *Stone*. The Fifth Circuit concluded that "*Stone* and SSR 85-28 are not substantially different enough to warrant a finding of error." *Id*. at 556. Accordingly, the ALJ's citation to SSR 85-28, rather than *Stone*, is not reversible error. Indeed, it is consistent with the severity standard announced in *Stone*.

Finally, the ALJ's failure to mention the severity of each of Plaintiff's alleged impairments is subject to harmless error analysis. Harmless error doctrine applies in Social Security disability cases. *See Morris*, 864 F.2d at 335. "Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have

20

not been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). "[H]armless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Davidson v. Colvin*, 164 F. Supp. 3d 926, 944 (N.D. Tex. 2015) (citing *Bornette v. Barnhart*, 466 F. Supp. 2d 811 (E.D. Tex. 2006) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003))).

Here, Plaintiff has not shown how he was prejudiced by the ALJ's decision to solely list the medical diagnoses for the impairments he found to be severe ("obesity, degenerative disc disease of the lumbar spine, and obstructive sleep apnea") rather than Plaintiff's characterization of his conditions ("a back impairment, left hip arthritis, problems with his legs and feet, neck problems, breathing issues, and high blood pressure").

An "ALJ must still consider the impact of [any] non-severe impairments—either singly or in combination with other conditions—when he determines [his] RFC." *Williams v. Astrue*, No. 3:09-CV-0103-D, 2010 WL 517590, at *8 (N.D. Tex. Feb. 11, 2010). But here, the ALJ did reference all of Plaintiff's alleged impairments, as well as Plaintiff's additional symptoms, in the RFC discussion. Tr. 21. Thus, even assuming the ALJ made an error in the step two severity discussion, "there is no ground for reversal because the ALJ proceeded beyond step two in the sequential analysis in discussing all of Plaintiff's impairments." *Jones v. Astrue*, 821 F. Supp. 2d 842, 851 (N.D. Tex. 2011). And Plaintiff has not demonstrated that including each of Plaintiff's alleged symptoms in the severity analysis at step two would have caused the ALJ to assess any additional functional limitations at step three.

Accordingly, the undersigned finds that to the extent the ALJ committed an error in the severity analysis, that error was harmless.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the hearing decision be AFFIRMED.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific or sufficient. Failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except on grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

ORDERED this 23rd day of July, 2021.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE

22